# COURT OF APPEALS
# DECISION
# DATED AND FILED

## October 14, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos. **2020AP197**
**2020AP198**

Cir. Ct. Nos. **2018TP33**
**2018TP34**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**
**DISTRICT II**

---

NO. **2020AP197**

IN RE THE TERMINATION OF PARENTAL RIGHTS TO S.T.J., A PERSON UNDER THE AGE OF 18:

RACINE COUNTY HUMAN SERVICES DEPARTMENT,

PETITIONER-RESPONDENT,

V.

W.L.J.,

RESPONDENT-APPELLANT.

---

NO. **2020AP198**

IN RE THE TERMINATION OF PARENTAL RIGHTS TO W.L.J., JR., A PERSON UNDER THE AGE OF 18:

RACINE COUNTY HUMAN SERVICES DEPARTMENT,

**PETITIONER-RESPONDENT,**

V.

**W.L.J.,**

**RESPONDENT-APPELLANT.**

---

APPEALS from orders of the circuit court for Racine County: DAVID W. PAULSON, Judge. *Reversed and cause remanded with directions.*

¶1    REILLY, P.J.[1]    In these consolidated termination of parental rights (TPR) cases, W.L.J. (the father) appeals from the circuit court's orders involuntarily terminating his parental rights to S.T.J. and W.L.J., Jr. (the children). The circuit court granted partial summary judgment at the grounds phase, declaring the father unfit on the ground of abandonment, pursuant to WIS. STAT. § 48.415(1)(a). As there are genuine issues of material fact concerning whether the father had "good cause" for his failure to visit or communicate with the children, we reverse and remand for a fact-finding hearing.

*Facts*

¶2    The children were first found to be children in need of protection or services (CHIPS) in July 2015 and placed outside the parents' home. The Racine County Human Services Department (the Department) filed a petition to terminate

---

[1] These appeals are decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version.

the father's parental rights to the children on September 10, 2018. The petition alleged three grounds for termination: (1) failure to assume parental responsibility, pursuant to WIS. STAT. § 48.415(6); (2) continuing CHIPS, pursuant to § 48.415(2); and (3) abandonment, pursuant to § 45.415(1)(a)2. Shortly thereafter, the Department filed a motion for summary judgment solely on the issue of abandonment, alleging that the father had "no contact with his children since February 21, 2018, a period in excess of 9 months"[2] and that "[t]here is no known good cause reason for [the father's] failure to visit or communicate with his children." In response, the father argued that his "incarceration and barriers to communication" provided good cause for his failure to contact his children.

¶3 The circuit court, despite the guardian ad litem opining that the question was whether the father "had the ability to contact these children," and arguing that that question could not be answered "without some form of fact finding hearing," concluded that the Department established grounds for abandonment pursuant to WIS. STAT. § 48.415(1)(a)2. and that the father failed to raise a genuine issue of material fact sufficient to preclude summary judgment. The court found the father unfit at the grounds phase. Following a dispositional

---

[2] The circuit court signed an injunction prohibiting contact between the father and the children on August 22, 2018, which was modified to allow written letters on January 7, 2019. Pursuant to WIS. STAT. § 48.415(1)(b), the three-month time period under § 48.415(1)(a)2. "shall not include any periods during which the parent has been prohibited by judicial order from visiting or communicating with the child." The time period alleged for abandonment is between February 21, 2018, and August 22, 2018.

hearing, the circuit court terminated the father's rights to the children.[3] The father appeals.[4]

*TPR Procedure*

¶4      Under Wisconsin law, TPR proceedings involve a two-part statutory procedure: the "grounds" phase and the "dispositional" phase. ***Steven V. v. Kelley H.***, 2004 WI 47, ¶¶24, 26, 271 Wis. 2d 1, 678 N.W.2d 856. "In the first, or 'grounds' phase of the proceeding, the petitioner must prove by clear and convincing evidence that one or more of the statutorily enumerated grounds for termination of parental rights exist." ***Id.***, ¶24; *see also* WIS. STAT. § 48.31(1). If the court or a jury finds one of the twelve grounds under WIS. STAT. § 48.415, "the court shall find the parent unfit." ***Steven V.***, 271 Wis. 2d 1, ¶25 (quoting WIS. STAT. § 48.424(4)). In the second, dispositional phase, the court must determine what is in the "best interest of the child," considering, at a minimum, the "best interest" factors enumerated in WIS. STAT. § 48.426(3). ***Steven V.***, 271 Wis. 2d 1, ¶27.

---

[3] The children's mother was also subject to a TPR petition, which was granted by default when she failed to respond to the Department's motion for summary judgment. The mother is not a party to this appeal.

[4] The father filed his notice of appeal on January 9, 2020. On February 18, 2020, we ordered these cases consolidated for purposes of briefing and disposition and remanded these matters, pursuant to the father's motion, to the circuit court for proceedings on a post-termination motion, which included a claim of ineffective assistance of counsel. The father filed his post-termination motion on March 3, 2020. Due to delays caused by the COVID-19 pandemic, the circuit court held a post-termination evidentiary hearing on July 1, 2020, ultimately denying the father's motion.

*Abandonment*

¶5 This appeal involves only the grounds phase, specifically the statutory ground for abandonment pursuant to WIS. STAT. § 48.415(1)(a)2. Section 48.415(1)(a)2. provides that abandonment may be established where a "child has been placed, or continued in placement, outside the parent's home by a court order" and "the parent has failed to visit or communicate with the child for a period of 3 months or longer." In this case, the father does not challenge the finding that he had not visited or communicated with his children in over three months. At issue before this court is whether there is a genuine issue of material fact regarding whether the father satisfied § 48.415(1)(c), which provides that "[a]bandonment is not established … if the parent proves" "[t]hat the parent had good cause for having failed to visit with the child throughout the time period" and "[t]hat the parent had good cause for having failed to communicate with the child throughout the time period." If the parent shows good cause for having failed to communicate with the child, he or she must prove that one of the following occurred:

> a. The parent communicated about the child with the person or persons who had physical custody of the child during the time period specified … or … with the agency responsible for the care of the child during the time period specified in par. (a) 2.
>
> b. The parent had good cause for having failed to communicate about the child with the person or persons who had physical custody of the child or the agency responsible for the care of the child throughout the time period specified ….

Sec. 48.415(1)(c)3.

¶6 The statute does not define "good cause." In evaluating the claim of good cause, the finder of fact may consider (1) "whether [the child's] age or

5

condition would have made any communication meaningless"; (2) "whether [the parent] had a reasonable opportunity to visit or communicate with [the child] or communicate with [the person] who had physical custody of [the child] [or the agency responsible for the care of the child during the time period]"; (3) "attempts to contact [the child]"; (4) "whether person(s) with physical custody of [the child] prevented or interfered with efforts by [the parent] to visit or communicate with [the child]"; (5) "any other factors beyond [the parent's] control which prevented or interfered with visitation or communication"; and (6) "all other evidence presented at this trial on this issue." WIS JI—CHILDREN 313.

*Standard of Review*

¶7    This case comes before the court on summary judgment, and the methodology is well known. We review a grant of summary judgment de novo, benefiting from the circuit court's analysis. *State v. Bobby G.*, 2007 WI 77, ¶36, 301 Wis. 2d 531, 734 N.W.2d 81. Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2); *Steven V.*, 271 Wis. 2d 1, ¶6. Importantly, on summary judgment review, "the nonmoving party is entitled to the benefit of all favorable facts and reasonable inferences drawn in his or her favor." *Oddsen v. Henry*, 2016 WI App 30, ¶26, 368 Wis. 2d 318, 878 N.W.2d 720. Here, the burden rests with the Department to show that it is entitled to judgment as a matter of law, "taking into consideration the heightened burden of proof specified in WIS. STAT. § 48.31(1) and required by due process." *See Steven V.*, 271 Wis. 2d 1, ¶6.

¶8      Our supreme court has determined that a grant of partial summary judgment at the grounds phase of a TPR proceeding is permitted, but has acknowledged that "[i]n many TPR cases, the determination of parental unfitness will require the resolution of factual disputes by a court or jury at the fact-finding hearing, because the alleged grounds for unfitness involve the adjudication of parental conduct vis-a-vis the child." *Id.*, ¶¶5, 34-36.  As relevant to this case, abandonment was identified as "one of the fact-intensive grounds for parental unfitness" for which "[s]ummary judgment will ordinarily be inappropriate in TPR cases." *Id.*, ¶36; *see also* **Bobby G.**, 301 Wis. 2d 531, ¶40.  While "the court has not held that this ground could never form the basis for partial summary judgment," the court has "stressed that '[t]he propriety of summary judgment is determined case-by-case.'" **Bobby G.**, 301 Wis. 2d 531, ¶40 (citation omitted).

*Discussion*

¶9      We conclude that the question of whether the father has demonstrated good cause for his failure to communicate with his children, the Department, or the individual that had custody of the children cannot be decided on summary judgment under the circumstances in this case.  As our supreme court explained, "If the applicable statutory basis for unfitness indeed provides for a 'defense' or 'explanation' that would preclude a finding of unfitness, and there are material facts in dispute regarding a parent's asserted 'defense' in this regard, then summary judgment will not be appropriate." **Steven V.**, 271 Wis. 2d 1, ¶48 n.8; *see also* **Racine Cnty. Human Servs. Dep't v. S.J.A.**, Nos. 2019AP2160 and 2019AP2161, unpublished slip op. ¶17 (WI App Feb. 5, 2020); **J.M.W. v. J.R.P.**, No. 2017AP1390, unpublished slip op. ¶18 (WI App Sept. 20, 2017) ("[W]e

strongly caution against the use of summary judgment at a TPR proceeding where the parent is present and objecting.").

¶10     It is clear from the record that there are material facts in dispute. While the father did not contest that the Department had met the statutory requirements under WIS. STAT. § 48.415(1)(a)2., he did object based on the purported good cause for his failure to visit or communicate with his children. Namely, his incarceration, his indigency, and the failure of the Department to facilitate communication.  In his affidavit, the father averred that he had been in custody since February 20, 2018, and that he is "currently indigent and the institutions where I have been limit my privileges."  According to the father, he was "only able to send letters or make phone calls if family or friends put money into [his] inmate account" and his "financial resources have been extremely limited since [his] incarceration."  The father also stated in his affidavit that during his incarceration he wrote to the children's mother to "inquire[] about the well-being of my children and often asking about their whereabouts."  He claimed that he was not provided postage or envelopes from the Department to facilitate communication with his children, nor was he provided the telephone number or address of his children's placement.

¶11     The Department provided no evidence to resolve the father's claims on these issues.  Instead, the Department argues that the father sent letters to the children's mother, when he "claims that he did not have enough money to

correspond with the Department regarding his children."[5]  The Department also alleges that the children were placed with the same person "they were placed [with] before being reunified with [the mother] in November 2017," but there is no assertion that contact information for this person was provided to the father.[6]  The rest of the Department's reply attempts to recount the details of the father's recent criminal history, which the father does not appear to contest and has very little bearing, if any, on the abandonment factors.  The Department's arguments do not resolve any factual disputes and, at best, merely suggest that material facts as to the father's defense were not fully developed.  We must give the benefit of all favorable facts and reasonable inferences to the father, leading to the conclusion that material facts as to good cause are in dispute and summary judgment is inappropriate.

---

[5] At the post-termination hearing, the father expanded upon this information, testifying that "[n]ot all" the letters he sent to the children's mother were "sent by postage."  Instead, he claimed that he sent the letters to her while they both were in the Racine County Jail and he would "just fold [the letters] up and write the person['s] name on it and if we know the door number, and then we slide it under the door."

[6] At the post-termination hearing, the father explained that the children were placed at the time with their mother's family member, and the children's mother was "talking to her family" and she was "able to give [the father] updates on the kids."  He explained that while he did know who the children were with, he "didn't know exactly where [the mother's family member] lived," and when he asked the mother for the phone number to speak with the children he was "denied" the information and told "they won't give out their number or something."  The father also testified that while he was in custody, he asked the mother's family member to have contact with the children: "Every court date when I walked past her.  When I was incarcerated they'll take me past her, she'll be sitting [in the gallery of the courtroom] and I ask her can she bring the kids to see me or either send some pictures or something."  He explained that the family member said "'Yes, I'll do it,' but it never get done."  While we do not rely on the father's testimony at the post-termination hearing on summary judgment, this testimony supports our position that there were material facts in dispute concerning the father's good cause for not communicating with the children.  *See **Racine Cnty. Human Servs. Dep't v. S.J.A.**,* Nos. 2019AP2160 and 2019AP2161, unpublished slip op. ¶18 n.10 (WI App Feb. 5, 2020).

¶12 "Terminations of parental rights affect some of the parents' most fundamental human rights." *Evelyn C.R. v. Tykila S.*, 2001 WI 110, ¶20, 246 Wis. 2d 1, 629 N.W.2d 768. At the grounds phase, "the parent's rights are paramount" and, therefore, "require heightened legal safeguards to prevent erroneous decisions." *Dane Cnty. DHS v. Mable K.*, 2013 WI 28, ¶60, 346 Wis. 2d 396, 828 N.W.2d 198 (citation omitted). "One of the purposes of Chapter 48, the Children's Code, is to provide for procedures through which all interested parties are assured fair hearings that enforce their legal rights." *Id.*, ¶61. The father was denied his right to a fact-finding hearing.

¶13 To be clear, we do not take a position on whether the father will prevail upon a proper fact-finding hearing at the grounds phase. Our conclusion in this case has no bearing on the strength of the father's case or whether the Department could succeed on the other grounds for unfitness asserted in the TPR petition. Our decision rests entirely upon an analysis of the circumstances in this particular case and whether the father's affidavit demonstrated that disputed issues of material fact exist as to whether he had good cause for failing to visit and communicate with his children.[7]

---

[7] The father also presents an ineffective assistance of counsel claim, arguing that trial counsel performed deficiently by presenting "a confusing and imprecise defense to the" motion for summary judgment. As we decide this case on different grounds, we need not reach the father's ineffective assistance claim. *See Patrick Fur Farm, Inc. v. United Vaccines, Inc.*, 2005 WI App 190, ¶8 n.1, 286 Wis. 2d 774, 703 N.W.2d 707 (we decide cases on the narrowest possible grounds).

*Conclusion*

¶14    For the foregoing reasons, as the Department did not establish grounds for termination, we reverse the orders involuntarily terminating the father's parental rights to the children.  We direct the court on remand to hold a fact-finding hearing pursuant to WIS. STAT. § 48.424, and, if necessary, a new dispositional hearing in accordance with WIS. STAT. § 48.427 on whether the father's parental rights should be terminated.  *See **Bobby G.**,* 301 Wis. 2d 531, ¶6.

*By the Court.*—Orders reversed and cause remanded with directions.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.