**COURT OF APPEALS
DECISION
DATED AND FILED**

**February 13, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1582**

Cir. Ct. No. **2022TP48**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

IN RE THE TERMINATION OF PARENTAL RIGHTS TO A. D. L.,
A PERSON UNDER THE AGE OF 18:

K. W. AND D. W.,

    PETITIONERS-RESPONDENTS,

  V.

S. L.,

    RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Chippewa County: BENJAMIN J. LANE, Judge. *Reversed and cause remanded for further proceedings*.

¶1    GILL, J.[1]  Susan[2] appeals from an order terminating her parental rights to her son, Alex, on the ground of abandonment pursuant to WIS. STAT. § 48.415(1)(a)3.[3]  Susan argues that the circuit court erred by granting a motion for partial summary judgment due to there being a genuine issue of material fact as to whether she knew Alex's whereabouts during the period of abandonment.  We conclude that a genuine issue of material fact exists as to whether Susan knew or could have known the foster parents' address.  Accordingly, we reverse the order terminating Susan's parental rights and remand for further proceedings on the termination of parental rights (TPR) petition.

## BACKGROUND

¶2    Alex was born in February 2020 to Jeffrey and Susan.  Shortly after Alex's birth, Susan left the hospital and did not return.  The Eau Claire County Department of Human Services (hereinafter, the Department) placed Alex with his foster parents when he was three days' old.  In January 2022, Alex's foster parents filed a petition for guardianship of Alex.  The guardianship petition listed the names, address, and telephone number of Alex's foster parents together with the date for a hearing on the guardianship petition.  A copy of the guardianship

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2021-22).  All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] For ease of reading, we refer to the appellant, the child, and the associated family members in this confidential matter using pseudonyms, rather than their initials.

[3] Cases appealed under WIS. STAT. RULE 809.107 are "given preference and shall be taken in an order that ensures that a decision is issued within 30 days after the filing of the appellant's reply."  RULE 809.107(6)(e).  Conflicts in this court's calendar have resulted in a delay.  It is therefore necessary for this court to sua sponte extend the deadline for a decision in this case.  *See* WIS. STAT. RULE 809.82(2)(a); ***Rhonda R.D. v. Franklin R.D.***, 191 Wis. 2d 680, 694, 530 N.W.2d 34 (Ct. App. 1995).  Accordingly, we extend our deadline to the date this decision is issued.

2

petition intended for Susan was mailed to her brother's address where she had temporarily resided. However, Susan had left that residence by the time the guardianship petition was mailed. Thereafter, Susan's brother informed her of the guardianship hearing by sending her "a screenshot of the upcoming [c]ourt date." The guardianship hearing was held in March 2022 with both Jeffrey and Susan in attendance. Jeffrey and Susan consented to the guardianship, and the circuit court granted the guardianship.

¶3 In October 2022, Alex's foster parents filed a petition to terminate Jeffrey's and Susan's parental rights to Alex.[4] The petition alleged that Susan abandoned and failed to assume parental responsibility for Alex pursuant to WIS. STAT. § 48.415(1)(a)3. and (6). Alex's foster parents then moved for partial summary judgment on the abandonment ground for termination of Susan's parental rights.[5] The motion for partial summary judgment alleged two periods of abandonment: first, from March 2020 until August 2021; and, second, from March 2022 (the date of the guardianship proceeding) to October 2022 (the date the TPR petition was filed).

¶4 Susan opposed the motion for partial summary judgment and filed an affidavit. She averred that she wrote multiple letters to Alex but that, due to her

---

[4] Jeffrey consented to the TPR at an initial plea hearing and does not appeal his TPR. We mention his parental rights only to the extent necessary to address Susan's arguments on appeal.

[5] "Wisconsin has a two-part statutory procedure for the involuntary termination of parental rights." *Steven V. v. Kelley H.*, 2004 WI 47, ¶24, 271 Wis. 2d 1, 678 N.W.2d 856. In the first step, the grounds phase, a fact finder must determine whether the petitioner has established the existence of one or more of the statutorily enumerated grounds for a TPR. *See* WIS. STAT. § 48.424(1)(a). In the second step, the dispositional phase, the circuit "court is called upon to decide whether it is in the best interest of the child that the parent's rights be permanently extinguished." *Steven V.*, 271 Wis. 2d 1, ¶27.

ongoing Child in Need of Protection and/or Services (CHIPS) case regarding Alex, she gave those letters to her caseworker, Courtney Verbracken, to deliver. Susan also stated that she never received the guardianship petition containing Alex's foster parents' contact information and that she did not obtain the foster parents' contact information until she received the TPR petition. Susan further indicated that she mailed a book for Alex in November 2021[6], mailed another book for Alex to the foster parents' address in November 2022, and that she sent one letter for Alex to that address between March 2022 and November 2022. It is unclear whether this letter was mailed at the same time as the book, as Susan provided no further information about when she sent the letter.

¶5 Susan later filed a second affidavit, wherein she asserted that she contacted Jeffrey in May or April 2022 to try to learn where Alex was residing. She also stated that she contacted the Department between March 2022 and July 2022 in an attempt to obtain Alex's foster parents' contact information. Susan also contacted her brother and asked him to contact Jeffrey and obtain contact information for Alex.

¶6 Verbracken also submitted an affidavit to the circuit court. Verbracken declared that Susan was offered four scheduled visits with Alex shortly after his birth but did not attend any of those visits. Verbracken further averred that she would have developed a visitation plan if Susan had requested a visit. Verbracken also stated that she gave Susan's letters for Alex to his foster parents, but Verbracken did not provide any details on the dates of those letters.

---

[6] Susan did not state where she mailed the book in 2021.

¶7      In its decision on the foster parents' motion for partial summary judgment, the circuit court noted that WIS. STAT. § 48.415(1)(a)3. required the foster parents to

> prove that [Susan]: 1.) left the child with another person; 2.) she knew where and with whom the child resides;[7] 3.) she failed to visit or communicate with the child for a period of six months or longer; and 4.) that she did not have good cause for her failure to visit or communicate.

The court then noted that when Susan was alleged to have left Alex at the hospital, there was no evidence that she left Alex with another person. Thus, the court concluded that the foster parents failed to prove the first element of abandonment under § 48.415(1)(a)3. for the time period of March 2020 to August 2021.

¶8      Turning to the second period of alleged abandonment, the circuit court noted that Susan consented to the foster family having guardianship of Alex—thus leaving Alex with a person. Further, the court found that, based on the guardianship petition containing Alex's foster parents' contact information, there was evidence that Susan knew "where and with whom" Alex resided as of March 2022. Addressing Susan's affidavit and whether she communicated with Alex, the court noted that Susan averred to sending a book to Alex in November 2021 and one letter "after March[] 2022." However, the court also noted that Susan acknowledged not knowing the foster parents' address until the TPR petition was filed; thus, the court found that Susan did not send the letter until "after [the] TPR petition was filed in October[] 2022." The court then found that

---

[7] We pause to note that the statutory language of this element slightly differs from the circuit court's recitation of the elements. WISCONSIN STAT. § 48.415(1)(a)3. requires the petitioner to prove that the parent "knows or could discover the whereabouts of the child."

Susan did not visit or communicate with Alex for a period of six months or longer. Finally, the court noted that while Susan was incarcerated and struggled with homelessness at times, there was no evidence that either of those circumstances prevented her from communicating with Alex between March 2022 and October 2022. Thus, the court found that Susan did not have good cause for failing to visit or communicate with Alex.

¶9　　Based on the above findings, the circuit court granted Alex's foster parents' petition for partial summary judgment on the ground of abandonment. After a hearing during the dispositional phase of the TPR proceedings, the court found that the termination of Susan's parental rights was in Alex's best interests and terminated her rights. Susan now appeals the court's order terminating her parental rights to Alex, arguing that the court erred by granting the foster parents partial summary judgment on the abandonment ground. Additional facts will be provided below as necessary.

## DISCUSSION

¶10　　Both parties agree that the only issue on appeal is whether there exists a genuine issue of material fact as to whether Susan knew or could have discovered the whereabouts of Alex between March 2022 and October 2022.[8]

¶11　　We review a circuit court's grant of summary judgment de novo, "applying the same methodology as the circuit court but benefitting from the

---

[8] Susan does not challenge the circuit court's finding that she left Alex in the care of another person. She concedes that she did not have contact with Alex between March 2022 and October 2022—i.e., a period of more than six months—and that she knew Alex was in the foster parents' care during that time period. In addition, Susan expressly denies that she is challenging the court's finding that she did not have good cause for failing to visit or communicate with Alex.

[court's] analysis." ***State v. Bobby G.***, 2007 WI 77, ¶36, 301 Wis. 2d 531, 734 N.W.2d 81. Summary judgment is available "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2). "In evaluating the evidence, we draw all reasonable inferences from the evidence in the light most favorable to the non-moving party." ***State v. Hydrite Chem. Co.***, 2005 WI App 60, ¶19, 280 Wis. 2d 647, 695 N.W.2d 816. "Whether an inference is reasonable and whether more than one reasonable inference may be drawn are questions of law." ***Id.***

¶12    Summary judgment is available in the grounds phase of a TPR case where the material facts are undisputed. ***Steven V. v. Kelley H.***, 2004 WI 47, ¶35, 271 Wis. 2d 1, 678 N.W.2d 856. "Summary judgment will *ordinarily* be inappropriate in TPR cases premised on … fact-intensive grounds for parental unfitness," which include abandonment under WIS. STAT. § 48.415(1). ***Steven V.***, 271 Wis. 2d 1, ¶36 (emphasis added). However, our supreme court has not held that fact-intensive grounds can "never form the basis for partial summary judgment." ***Bobby G.***, 301 Wis. 2d 531, ¶40. Rather, "[t]he propriety of summary judgment is determined case-by-case." ***Steven V.***, 271 Wis. 2d 1, ¶37 n.4.

¶13    WISCONSIN STAT. § 48.415(1)(a)3. provides that abandonment may be established by proving that "[t]he child has been left by the parent with any person, the parent knows or could discover the whereabouts of the child and the parent has failed to visit or communicate with the child for a period of 6 months or longer." Sec. 48.415(1)(a)3. "A parent 'could have discovered the whereabouts of the child' if, through reasonable efforts by that parent, (he) (she) would have

discovered the location where the child resided or could be contacted." Wis JI—
Children 314 (2019).

¶14 Susan first argues that the affidavits, at this summary judgment stage, do not support the circuit court's inference that she knew the foster parents' address. We agree. The court inferred that Susan knew "where and with whom" Alex resided with due to Susan: (1) receiving a copy of the guardianship petition in March 2022, (2) calling Alex's foster mother in November 2022, (3) sending one letter to Alex after March 2022, and (4) mailing a book to Alex in November 2021. This inference is unreasonable when viewing the affidavits in the light most favorable to Susan.

¶15 First, Susan averred that she never received the guardianship petition due to the petition being sent to her brother's address after she moved out of his residence. Susan explained that she only became aware of the guardianship proceeding due to her brother sending her a "screenshot of the upcoming [c]ourt date." Susan also stated that she "did not have any documentation with the [foster parents'] address," and Alex's foster parents do not allege that their contact information was in the screenshot that Susan's brother sent.

¶16 Second, neither Susan's calling the foster mother in November 2022 nor sending one letter to Alex after March 2022 necessarily support the inference that Susan knew Alex's foster parents' contact information between March 2022 and October 2022. Susan explained that she obtained Alex's foster parents' contact information when she received the TPR petition in November 2022. Thus, Susan could have obtained Alex's foster mother's phone number when she received the TPR petition in November 2022. Similarly, Susan stated that she only mailed one letter to Alex between March 2022 and November 2022 because

she did not have the foster parents' address until she had the TPR petition. Thus, it was unreasonable for the circuit court to infer that Susan mailed the letter—and thus knew the foster parents' address—before November 2022.

¶17 Finally, mailing a book to Alex in November 2021 does not support the inference that Susan knew the foster parents' address before November 2022. Susan stated that the book she mailed was returned to sender and she did not testify to the mailing address she used. Thus, the circuit court's inference that Susan knew the foster parents' address before November 2022 was not reasonable. Because both parties dispute whether Susan knew Alex's foster parents' contact information, and the evidence permits multiple, competing reasonable inferences on this issue, and because the resolution of this issue is dispositive, a genuine issue of material fact exists as to whether Susan knew Alex's foster parents' contact information between March 2022 and October 2022.

¶18 Alex's foster parents argue that even if Susan did not know their contact information, Susan could have obtained their address. However, we conclude that a genuine dispute of this material fact exists on this point, preventing summary judgment.

¶19 We note that the circuit court made no findings or inferences regarding whether Susan could have discovered the foster parents' contact information. As will be discussed below, Susan's affidavit sets forth the efforts she made to obtain the foster parents' contact information. In order to determine whether Susan could have obtained Alex's foster parents' contact information, we would have to make a factual finding on whether Susan's efforts were reasonable. *See* WIS JI—CHILDREN 314 (2019). As noted above, "[s]ummary judgment will *ordinarily* be inappropriate in TPR cases premised on … fact-intensive grounds

9

for parental unfitness," which include abandonment under WIS. STAT. § 48.415(1). *Steven V.*, 271 Wis. 2d 1, ¶36 (emphasis added).

¶20 Alex's foster parents argue that Susan could have asked her brother for the guardianship petition that was sent to his address. Susan, however, stated she never received the guardianship petition, and thus she may not have known that the foster parents' contact information was in the petition and, consequently, may not have known to ask her brother for it. Susan also stated that she attempted to obtain the foster parents' address by contacting the Department. Similarly, the Department said that it was contacted by Susan regarding the guardianship petition, but that it was not involved in the guardianship proceedings. Susan also asserted that she tried to obtain Alex's foster parents' contact information from Jeffrey, but that she was unable to contact him. After Jeffrey did not respond to her, Susan tried to have her brother contact Jeffrey to obtain the foster parents' contact information. Viewing these facts in the light most favorable to Susan, a reasonable jury could find that Susan made reasonable efforts to obtain Alex's foster parents' contact information but was unable to do so. Whether Susan's efforts in this regard were reasonable is a decision properly left to the trier of fact.

¶21 Alex's foster parents also argue that their contact information was in all of the permanency plans that were mailed to the address that Susan provided. However, it was not established to what address the permanency plans were mailed or when they were mailed, and there is no evidence in the record to that effect. We note that Susan fails to specifically address in her affidavits whether she received the permanency plans. However, she broadly states that she "did not have any documentation with the [foster parents'] address."

¶22 Thus, there exists a genuine issue of material fact as to whether Susan's efforts to obtain Alex's foster parents' contact information were reasonable. Consequently, the circuit court erred by granting the foster parents' motion for partial summary judgment on grounds. We therefore reverse the court's order terminating Susan's parental rights and remand for further proceedings on the TPR petition.

*By the Court.*—Order reversed and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.